Case number 18-5216, USA v. Andrew Moorhead. Argument not to exceed 15 minutes per side. Ms. Smothers, you may proceed to the appellant. Good morning. I am Diane Smothers from the Federal Defender in the Western District of Tennessee representing Mr. Andrew Moorhead. As your honors are aware, this is I suppose what could be called another TOR case or NIT case involving the issuance of a warrant out of Virginia in an effort on the government's behalf to locate, track down and identify various persons, both domestically and potentially internationally, that were involved in either possessing or distributing child pornography. You said this is another NIT case. Has your argument succeeded in any other of the courts that the argument has been presented to? I would state, your honor, at this point, no, not at this level. And as your honors are aware, there are several cases that have proceeded up on petitions for cert. Some of those more recently have been denied. We reference some of those in our filings, the United States v. Verdeen. So if we rule in your favor, we will be creating a conflict with how many circuits? Oh, I didn't write the total number down. Virtually every other circuit, your honor. About seven, I think. Yes, sir. Yes, sir. I mean, we can do that, but I'm going to be somewhat reluctant to do it. And we understand, the appellant does understand the situation as far as the status of the law today in relation to this issue. As we've indicated in our filing, both factually, because of the change in Rule 41, the amendment that has occurred post, I guess post-search is maybe a better way to say it, the specific facts which are alleged in Mr. Moorhead's case and have been alleged in the other cases that have gone through the district or appellate levels in other circuits, the factual situations are virtually identical. With a person being identified through their Internet address, if you will, by reason of this hardware or software that was put onto a machine in Virginia, those specific facts, we have to agree, are unlikely to occur again and require judicial review, except for cases which may be in the pipeline that certainly we are not aware of. The government may be aware of other prosecutions that would be forthcoming from this search, if you will, or from this device. But in the future, since the rule has been amended, the specific issue of whether the magistrate overreached in issuing the warrant, to start with, the jurisdiction, the issue of whether it's voidable, void ab initio, and how that impacts the appellant as it has always been. The appellant's ability or the suspect's ability, if you will, to attack the government's use of that material is very unlikely to arise again. It would arise from a historical case. So we don't need to be quite as concerned with the issue of deterring future misconduct of law enforcement. The cases seem to focus on that from the Supreme Court on down in terms of the good faith exception in particular. And so it's really not as much of a concern given the 2016 changes to Rule 41. I would concur. I generally concur with that, Your Honor. I think the only, and the exclusionary rule from a defense practitioner's standpoint is one of those rules. It's almost like harmless error. As we encounter it in our practice, it's a rule that at times feels as if or seems as if it has swallowed up, the exception has swallowed up the rule. And that may be for a variety of reasons, but I think in this particular case, in Mr. Moorhead's case, and it would apply in this instance. Again, speaking in the future, I certainly couldn't say, but where the courts look to what is the exclusionary rule meant to address or what are we trying to avoid or correct, there's reference to recurring or systemic negligence. And I suppose that in this case it could be looked at in one of two ways. Recurring obviously could be multiple acts over time, whatever those acts might be, either police officers stopping people without probable cause or some of the things that come to mind. I would offer that in this particular case, and it's a limited holding. I don't, as I indicated, I don't anticipate a future wave of cases in relation to this specific issue. But in this particular case, the government took this action, got the warrant, and then acted upon it, downloaded or attached, if you will, the means of identifying people. And again, we respectfully disagree with our court's finding or the assessment that this would be equivalent to a tracking device. I think there's a separate warrant provision for that. I think that clearly I guess, you know, I'm a little confused about several things with respect to your argument here. Number one, what exactly is so bad about the government's conduct here? I mean, they were very transparent in the warrant, in the affidavit and support about exactly what they were going to be doing. A United States magistrate judge, unquestionably a neutral jurist, reviewed that, concluded that it did satisfy or did fall within one of the venue provisions of Rule 41 and granted the warrant. I mean, what is so egregious about that conduct that we ought to take, inflict the societal penalty of letting the defendants in these cases go free? What was so bad about what the government did here? As we indicated in our filing, Your Honor, I think a concern that we have raised and have mentioned is that in that particular district, at least, there are multiple, it's a large district, there are multiple district judges there and sitting. But district judges typically don't issue warrants, so that's Yes, sir. That would be unusual. I mean, there's nothing wrong with a magistrate judge issuing a warrant. That a magistrate judge issued the warrant would not seem to me to support application of the exclusionary rule, unless I'm missing something here. And that is often the norm in our district as well, Your Honor, that magistrates do that. That is a substantial, I would offer, part of their workload. But I think in this, if, and there's a finding that would have to be made, if the court finds that there was negligence or wrongful conduct on behalf of the agents. That's what I'm trying to find out. What is it? I think it would have to hinge on or spring from, if you will, the knowledge that the government had because of the wording at that time of Rule 41. I mean, I think it would have to come to the criminal rules committee and said, we'd like this amendment. I mean, that's the leadership of the Department of Justice criminal division. Yes, sir. And it's, if I recall, that letter was sent by the head of the criminal division. Yes, sir. And, I mean, that's a very different person and a very different position than an FBI field agent who's tracking child pornography that's being distributed throughout the country. How would we conclude that the agent was apprised of not only the criminal division's concern, but also the reasons for it, and that the agent, therefore, should have, perhaps without legal training, should have concluded that, indeed, this was not a proper venue for the application? I mean, isn't that pretty attenuated? Well, and again, Your Honor, I concur there is not, and I don't think that there would be the ability to show a direct line between the person, as you indicated, the chief or the head, making that request, which ultimately did take place, and the rule was amended down the road, and a field agent in the field. I don't think that that line exists and is even capable of being shown. But it's our position that, given the fact that the rule, that the change was requested and, in fact, was later made, shows that at the time this was issued, it did not encompass that broad and that wide, if you will, a reach. I mean, I think there's a very good argument for that. But if we're going, if we were to say, in this case, that the fact that the criminal division came to the Rules Committee and asked for a change means that every action contrary to that interpretation of a rule prior to the promulgation of the request to change is invalid, I mean, we're going to be, we want to talk about deterrence, we're going to be deterring the Department of Justice or anybody from coming to the Rules Committee and asking for changes to clarify the criminal rules because of, you know, this very argument that, oh, that means everything that happened before was obviously invalid and, you know, the government ought to be punished. I mean, that would be a bad deterrent effect, it seems. I would agree, on a societal basis, that may well be true. But I think the request and ultimately what happened, I would couch that more in terms of not a clarification of an existing rule but a request to change a rule, which is certainly not improper. I think you're probably right about that. Yeah, which is not improper. I would agree with you. But I guess I don't mean to get in anyone's way. So Rule 41 is a venue provision? I mean, the restyle or the amended rule makes that clear. It says venue. That is the title of the rule. So we have a violation of a venue provision in the criminal rules that describes which courthouse the government must go to in order to seek a warrant. It has nothing to do with the constitutional requirements of particularity or probable cause or whatever. So the government went to the wrong courthouse. Why is that a ‑‑ how does that turn into a constitutional violation that would support application of the exclusionary rule? I thought the exclusionary rule was like, you know, you violate the Fourth Amendment. That's serious business. That's more serious than violating a venue provision in the criminal rules. So, I mean, how do ‑‑ why would we even be talking about the exclusionary rule with regard to a venue provision in the criminal rules? Well, I would offer that while it is couched as a venue provision, in this case, and your honors may differ with me, but I think in this case that it is a legitimate finding or it would be a legitimate finding to say that this did arise to a constitutional violation. That still doesn't get us to home plate. I don't understand how a violation of a venue provision turns it into a constitutional violation. The Constitution requires probable cause, which they had, particularity, which the application had. I can't think of a Fourth Amendment requirement that this application did not have. Are you aware of any Fourth Amendment requirement that the application didn't have? Well, your honor, our position again is that ‑‑ I don't know how it sort of transforms. I mean, we have Section 636 in the background. I personally don't think there was a violation of that. Respectfully, I think Neil Gorsuch is wrong on that point. We don't disagree on much, but that's one thing. So, I don't know. I don't mean to take up your time, but I just don't see how it becomes a constitutional violation. Well, your honor, Mr. Moorhead, of course, as any individual defendant would, looks at this from the impact or the effect on him individually, and it does. The government's actions act in two ways. They act globally, if you will, and in this instance it could have been globally because they had no idea where those persons, if you will, those targets, I would say, would be found. They could be in Lithuania. They could be in Mexico. They could be in Ohio. There was no way to know. So the sweep of the request is to the four corners of the earth, literally, with computer situations as they are now. And I would respectfully say, although historically I think this would not have been a valid argument or something that would factually be supportable, if we look at the question of negligence, again, I think the magistrate being detached and all this, there's no argument about that. But I think if we're looking to is there a possible grounds for suppression, something to be deterred, and I'm sorry, my time is up. Oh, you may finish. Thank you. Something to be deterred, which again in this specific factual pattern is unlikely to occur again in light of the amendment, that if we look at the government's position in these particular cases, child pornography cases, cases involving computer data, if you will, that my experience has been the government's position in regards to a defendant, every time a defendant touches, if you will, downloads, accesses, views, any of this data, any time the data comes to a person's machine, to put it in layman's terms, that's considered an offense. If that is correct, then it may also be correct that the recurring, every time the government reached out and touched someone's computer with this one warrant, with the one sending and then waited to see what came back, every time a computer was touched, if that is a recurring act, then it's possible in this specific incidence, which again is unlikely to occur in the future, that the government's conduct in that was so broad sweeping that it could be called recurring, that in this particular limited instance, the recurring conduct or negligence is simply the vast number, Mr. Moorhead being one of them, the vast number of hits, if you will, that the government got from one, what we allege was an illegal action. They're all hits from a child porn website. Yes, sir. Okay, well, thank you for your patience with all those questions. Thank you. Ms. Ireland? This court should affirm the district court's ruling denying suppression in this case. It's not justified because it does not deter future misconduct. The agents acted objectively, reasonably in relying on the warrant that was issued by the magistrate in Virginia. 636, which prescribes the territorial jurisdictions of the magistrates, came about in an era when there was very little intangible property. This pertains to intangible items. It's important to note that the technology changes much faster than the law and faster than the rules. It doesn't mean that the rules we have don't cover it. It means that the rules we have could be more specific to cover these new circumstances, and the government argues that in this particular case, that's exactly what we have. The criminal division of the Department of Justice may want to suggest things that cover new sets of circumstances, but that doesn't mean there's not a place for it in what we currently have. I mean, you know, I think you probably want to make an argument that the tracking device thing is not frivolous, but I mean, you know, if we read the prior Rule 41 in an ordinary way, I'm very hard-pressed to see how the malware, so to speak, is a tracking device. Nothing's moving. Your point is not made. It's tough to amend the rules, and that was a pretty big amendment and a lot of opposition, and it got amended for a good reason. It did, and we acknowledge that. However, when posited with, I guess, a new set of circumstances, it's not unreasonable for the magistrate to perhaps thought that the information that is moving, which does constitute property, could fall under that. That's not an unreasonable interpretation. And so in presenting information. Wrong, but it's not crazy. Correct. Correct, Your Honor. And we would agree. It is not a tracking device, should not have been applied for under a tracking device warrant. That's the case. But it's not unreasonable to think a magistrate might understand that or might think that. Magistrates hear civil criminal matters. They are approached with countless types of information and positions each day. It's their job to look at it and make the call. That certainly makes sense, but as this issue has percolated up to the circuits, circuits have pretty much, I think, unanimously, those that have decided the issue, have found it's not a tracking device. I'm not aware of any circuit that has gone the other way. I mean, there's some district courts that found it. Yes, Your Honor. Tracking device. That's absolutely true. For purposes of the exclusionary rule, do we look at the magistrate's thinking or do we look at the officer's thinking? I think that both are valid. I think that both are important, but ultimately the magistrate. The purpose of the exclusionary rule is to deter misconduct by the police officers. I thought that was directed to the police officers. So we'd look at what a reasonable, objective police officer would have viewed this and whether a reasonable, objective police officer would have known that the warrant was issued without a basis. Isn't that what we do? It is, Your Honor. But I think in this set of circumstances, it's very reasonable to think that the officers acted appropriately. They did what they always do. The officers have less trading than the magistrate. Yes. I mean, to concentrate on the magistrate, would the magistrate have known that this was not authorized or not, I think is a wrong inquiry. I think we'd look at the officers, that's all. But even looking at the officers, they did what they always do. They provided the information. They were specific. They didn't hide the fact that they were seeking to search computers wherever located. The magistrate saw that information. And by explaining the technology and how it worked, it made sense. The magistrate made an independent determination. That information was there. And if she had decided that was inappropriate, she would have rejected the warrant. Are there other cases, NIT cases, kicking around in our circuit besides this one? There have been many at the district court level. I do not know that any have been appealed before the Sixth Circuit. I believe that this is the first panel to consider this argument. There are pending cases. My question is, seven other circuits have ruled on this. Yes, Your Honor. And we're going to issue a decision one way or the other, and whether it should be published. If there are numerous other cases that are pending in our circuit, the district judges may need some precedent on this issue. And so my question is, should we publish our decision one way or the other? The government's position is yes. I know for a fact that I have another appeal pending. It's in the briefing stages, and it is based on this same warrant. It is also from the Western District of Tennessee, and it is also based on the same factual issues. Will these issues come up again in the future? With the adjustment to Rule 41, I don't believe that this particular set of circumstances will come up in the future. However, we're constantly faced with trying to fit new technology into the rules as they currently exist. And in this case, I think not quite being familiar and understanding of the technology or fully understanding how the technology works, it confused issues a lot. You know, in this case, those who ultimately were charged reached into Virginia. It's been called a virtual trip, and I know some courts have rejected that argument. But for their accessing that child pornography website, the NIT would not have been deployed to their computers. They had to go into the website, log in with their identity and password, go to a forum, and then activate something on the forum. Then, whatever they requested went back to their computer along with this source code, the source code that was narrowly tailored to only collect their IP address, the user operating software that they were using, and whether it was under a particular user in a home, like Dad's computer or John's computer, and the MAC address, which identifies which particular device accessing an IP address is the one that received the information. We understand that there's a privacy interest at stake, but so far I don't believe a court has ruled that there's a privacy interest at stake in the IP address. And the IP address is what was used to locate the person accessing the child pornography website, and then we got substantive warrants in those districts to search those computers and to search those homes to seek information, and that information is what the prosecutions were based on. They weren't based on the net. You have a response to the defense's characterization of the putative violation here as constitutional? I believe the courts have determined it was a constitutional violation, Your Honor. I don't understand it. I mean, can you explain it to me? I don't get it. I don't quite get it either. I wonder if somebody's skipping a step on that. It's like, you know, there's a violation of something in a criminal case, and all of a sudden we're just talking about the exclusionary rule. As I understand it, the yellow light, I believe my time is close to... You may raise your hand. You've got green light. Okay, thank you. Oh, that's green? I'm sorry. We'll let you know if it's red. I apologize. Thank you. Thank you. The question being, when the net was deployed on the computer, it did a very limited search. Right. No, it's a search. It searched that information, and I guess that is the constitutional underpinnings. But it's not the requirements of the Fourth Amendment that were lacking, per this argument. I would agree, Your Honor. It was a venue provision. You had a totally lawful basis to obtain a warrant. All the Fourth Amendment boxes were checked. They went to the wrong courthouse. They didn't know where the right courthouse was. That's why the rule got amended. Exactly. But I just question that it's a constitutional violation, and that we ought to take for granted that, okay, now we have to do the exclusionary... I mean, I guess I'm asking you, do you want to make an argument that it isn't a constitutional violation, and that we ought not to be immediately jumping to the question of whether the exclusionary rule applies? I think for efficacy, that seems to be where the argument is happening, presuming that the warrant was ab initio, presuming that it was a constitutional violation. Here is where we're getting into the nuts and bolts of things. Do I agree that it was a constitutional violation? I don't know, but I do know that most courts have found that it was. Yeah. I just, I don't know. I mean, you know, when we start assuming things, then people think those things are true, and sort of, and it just, I don't see it. You know, sort of logically, I just, I'm not saying it's inconceivable, but I just don't see how a venue violation becomes, you know, a Fourth Amendment violation. I think Judge Kethledge is probably right, but I think you forfeited the issue by not arguing it on appeal. I mean, have you not? That is a very good point. So I will, on behalf of the government, argue that it's not a constitutional violation. It's not briefed in our brief. We chose to address the things that were most pertinent to this case and respond to appellant's argument. But truthfully, we did follow the requirements. The government got a warrant. It carefully considered the technology. It carefully considered its options. If they did not apply in Virginia where the server was located and where the users of Pacifier, of the Playpen website, this was Operation Pacifier, I misspoke, of the Playpen website were reaching in to obtain information, then where would the warrant issue? And the warrant can't issue in a random district where a computer might be. So given the alternatives, this was a very reasonable course of action that was carefully thought out, and had the magistrate not issued it, no search would have occurred.  No. Thank you, Your Honors. Thanks. Just in, as a final matter, and I would, I concur, good or bad, regardless of which way the court goes with your decision today, I think I would concur that a published decision is probably needed. There is a tide, if you will, it may not be an overwhelming tide, but there is a growing number, again, of circuits that have ruled contrary to our position, and we certainly understand that. It is apparently a first impression here. I know in our district, and we practice in the same courts, I myself do not have any other cases in the pipeline. There are some in the Memphis Division, and there may be others that have not yet been prosecuted that we are yet to learn of. But I think that guidance is needed on this, certainly at the lower court level. I would concur, and I think it would be a correct finding that this is not a tracking device under any stretch of the imagination as those things are thought of and as this functioned. And I would offer that, again, this is maybe a typical situation where the government is acting in Virginia, but the only reason they are in Virginia is because the agency, the FBI, took the server to Virginia. They could have taken the server to Montana or to New York. They could have taken it anywhere because of other considerations as far as the security of it and the use of it, if you will, facilities that they may have had on the ground to do that. It was taken to Virginia. That is not where it was. It was in another state originally. So we get into that. I think we would strongly disagree with any finding that, and again, to use the term, and it is not Ms. Ireland's term from her brief, but the virtual trip. We would strongly dispute that by any person, by either clicking on a website or going to a blog or a bulletin board in their computer, whatever that thing might be, that by touching it, looking at it, even typing in an address, creating an account, that I have somehow gone to that place, that the defendant has gone to that place. I think the defendant is acting where they are acting. So we would. Let me interrupt because your red light is on. Yes, sir. A quick question on this constitutional violation issue because I'm not sure of the answer either. But both parties cite, and most of the other circuits have cited, this United States v. Masters. Yes, sir. A case where the state court judge issued a warrant outside of his or her jurisdiction, and that court found that the warrant was null and void because the judge did not have authority to issue the warrant and therefore void of an issue of constitutional violation. Yes, sir. Just very, very quickly, like in 30 seconds, I guess I'm really struggling with the constitutional violation issue as well. Is that really the best case authority you have, really, that there's a constitutional violation there? I think our position is and has to be that it is different factually from a judge that does not have any authority, a retired judge or a judge who's in the wrong state. The magistrate judge in this case had authority to issue warrants, absolutely undisputed, in certain geographic areas, and that's the caveat. It's now been changed. I would read it to mean, if we're talking 636, he had authority to issue the warrant in the Eastern District of Virginia, i.e., it had to issue from there. Yes, sir. I do not think that that section limits the scope of the effects of the warrant. I mean, Rule 41b-2, if I recall, there are other provisions in Rule 41 that allow extraterritorial effects of a warrant. You can go get stuff in other districts. Nobody's ever said that's improper. Yes, sir. But again, it's our position that that is not what was requested here, and I think that's largely the basis for the rule amendment, which precludes this issue in the future. Yes. Okay, thank you for your help. Thank you. Thank you very much. I want to thank both counsel. Interesting issue. Obviously, you know, it's tough for rules to keep up with technology, which is advancing, obviously, at a rapid pace. But we appreciate your briefing and your arguments today. The case will be submitted, and we'll have a decision for you in due course. Thank you very much. The case will be submitted.